# WARD *vs.* THE STATE.

[INDICTMENT FOR GAMING WITH SLAVE.]

1. *What constitutes offense; general charge on evidence.*—To constitute the offense of playing cards with a slave or free negro, (Code, § 3256,) a game must be entered upon, and some act done towards its completion, though it is not necessary that the game should be played out; and where the only evidence before the jury is, that the parties were seen seated on opposite sides of a box, each with four or five cards in his hands, while the rest of the pack lay within their reach, with the top card turned face upwards, and that they immediately bunched the cards, on seeing the witness, and said that the slave was telling the defendant's fortune;—a charge to the jury, instructing them that, "if they believed the evidence, they must find the defendant guilty," is an invasion of their province.

FROM the Circuit Court of Dale.

Tried before the Hon. JOHN GILL SHORTER.

THE indictment in this case charged, "that Redding Ward, a white person, did play at cards with a slave named Cain, the property of Dempsey Dowling." "On the trial," as the bill of exceptions states, "the State introduced a witness, who testified, in substance, that, within twelve

months next before the finding of the indictment in this case, he went to a mill in said county, belonging to Mr. Dempsey Dowling, and there found the defendant and a slave, named Cain, who belonged to said Dowling; that they were seated at a box, the defendant on one side, and the slave on the opposite side; that the box had a handkerchief spread over it; that he saw four, five, or more cards in the slave's hands, and about the same number in the defendant's hands, while the balance of the pack was lying within reach of them, with a face-card on top, which had the face turned upwards; that he saw no money, or anything else, at stake; that the defendant and the slave, as soon as they saw him, bunched all the cards together, and the defendant remarked, 'that the slave was telling his fortune;' that after the cards were so bunched, or thrown together, the defendant told the slave to mark one of the cards on the back, and he could tell it by its face; that the slave marked one of them with his thumb-nail, (the defendant not seeing which one he marked,) and, after shuffling them, handed the cards to the defendant; and that the slave then told the defendant to mark and shuffle the cards for him in like manner. The witness further stated, that this sort of playing, or use of the cards, was all that he saw done by the defendant and the slave, except as above stated; and that the slave professed to be a fortune-teller, and was so reputed in the neighborhood. This being all the evidence, the court charged the jury, 'that, if they believed the evidence, they must find the defendant guilty, and assess a fine against him of not less than fifty dollars;' to which charge the defendant excepted."

PUGH & BULLOCK, for the prisoner.

M. A. BALDWIN, Attorney-General, *contra*.

STONE, J.—The defendant was indicted under section 3256 of the Code, which is in the following language: "Any white person, who plays at cards with any slave or free negro, must, on conviction, be fined," &c. We think

that, to come within this section, a game must be entered upon, and some act done towards its completion. Amusing one's self with cards, as with toys, will not make out the offense. It is not necessary, however, that the game shall be completely played out. If the game be in part entered upon, the statute is violated.—*Coggins v. The State*, 7 Porter, 264 ; *Holland v. The State*, 3 Por. 292 ; *Cochran v. The State*, 30 Ala. 542.; Webster's Dictionary, "To play."

The testimony recited in the bill of exceptions, shows that the defendant and the slave were seated on opposite sides of a box, each holding in his hand four, five, or more cards,—while beside them lay the pack, with the top card face-upwards. On seeing the witness, the defendant and the slave bunched the cards, and some expressions were indulged as to fortune-telling. This was all the evidence tending to prove the defendant's guilt. We concede, that these circumstances may have been strong, and from them the jury may have inferred that the parties had seated themselves to play at cards, and had so far entered upon the game as to deal out hands and turn up a trump ; yet, in order to establish the defendant's guilt, it was necessary that the jury should find a further fact or facts than were positively sworn to by the witness. Such further fact or facts, the law, unassisted by a jury, could not infer. We think the court, in its charge, invaded the province of the jury.—*Ogletree v. The State*, 28 Ala. 700 ; *Scitz v. The State*, 23 Ala. 42 ; *Morgan v. The State*, 33 Ala. 413 ; 1 Bish. Cr. Law, § 251.

Reversed and remanded.