# Jones *v.* The State.

*Indictment for Assault with Intent to Murder.*

1. *Impeaching defendant testifying for himself.*—The defendant in a criminal case having testified in his own behalf, the State may introduce proof of his general character in the neighborhood in which he resided, for the purpose of impeaching the credibility of his testimony.

2. *Explaining to witness meaning of "general character;" curing infirmity in testimony.*—A witness for the State, who had testified on his direct examination that the defendant's general character was bad; upon being asked, on his cross-examination, what he meant by "general character," and why he said that defendant's character was bad, replied: "Because defendant is bad." The court having overruled the defendant's motion to exclude the testimony of the witness, then explained to the witness the meaning of "general character;" whereupon, the witness stated that he knew the defendant's character, that it was bad, and that he would not believe him on oath. *Held*, that the last statement of the witness cured whatever infirmity may have attached to his testimony as originally brought out, and showed that no injury could have resulted to the defendant by the refusal of the court to exclude from the jury the first statement of the witness.

3. *Statements by defendant admissible against him.*—On a trial for assault with intent to murder, a voluntary statement made by the defendant in a conversation about the difficulty, shortly after it occurred, that he would have cut his adversary's throat if a certain per-

[Jones v. The State.]

son had not interfered, is admissible as a confession and as corroboration of other testimony.

4. *Assault with intent to murder; charges as to "specific" intent.*—On a prosecution for an assault with intent to murder, charges requested by the defendant, which require an acquittal of the felony, unless the jury find from all the evidence that the defendant had a "specific" intent to murder, tend to mislead, and are properly refused. (Following *Walls v. The State*, 90 Ala. 618.)

5. *Same; misleading and confusing ·charge.*—On a prosecution for an assault with intent to murder, where the indictment would support a conviction of either of three grades of assault, *viz:* assault with intent to murder, assault and battery, and simple assault,—it is not error to refuse a charge requested by the defendant, which declares that the burden rests upon the State to prove beyond a resonable doubt that the defendant is guilty as charged, before the jury can convict him; as such charge tends to mislead and confuse the jury, being susceptible of being understood by them to mean that the burden is upon the State to make out the highest grade of the offense. .

6. *Evidence as to character, to impeach defendant's testimony.*—When, in a criminal trial, evidence as to the defendant's character has been properly admitted for the purpose of impeaching his testimony, a charge requested, which withdraws from the jury the consideration of such evidence, is properly refused.

7. *Provocation for assault; charge as to.*—On a trial for assault with intent to murder, a charge which instructs the jury that if the defendant was provoked "in any manner," so that his passion or temper was aroused, this was sufficient "to deprive the act of its felonious intent," is erroneous, in ignoring the inquiries as to the adequacy ·of the provocation, and as to whether or not the defendant was himself the aggressor.

8. *General exception to refusal to give several charges requested.*—A general exception to the refusal of the court to give several written charges as requested, will avail nothing as to any of them if either of them is erroneous.

APPEAL from the Circuit Court of Crenshaw.

Tried before the Hon. JOHN·P. HUBBARD.

The indictment in this case charged that the defendant, John Jones, "unlawfully, and with malice aforethought, did assault John Maloy, with intent to murder him." Judgment was rendered upon a verdict of the jury finding the defendant guilty as charged in the indictment. On the trial, as the bill of exceptions shows, the State introduced evidence tending to sho⊽ that the defendant stopped John Maloy while he was riding in a buggy along a public road, and said to him, "Now I am going to make you quit calling me ugly names;" that the defendant alighted from his wagon, took a rail from a fence on the side of the road, and started towards Maloy with the rail. When the defendant was within a few feet of Maloy, he, Maloy, jumped from his buggy, and took out his knife. The defendant then threw down the rail, drew a knife, and, approaching Maloy, struck at him, brushing his whiskers with the knife. .Joe Jones, a

brother of the defendant, and another man came up about this time, separated the defendant and Maloy, and made them return to their respective vehicles. Two witnesses for the State, Bryant and Richards, each testified that the defendant, in a conversation about the difficulty with Maloy, shortly after it occurred, said that he would have cut Maloy's throat if Joe Jones had not pushed him off. The defendant moved to exclude this testimony, and excepted to the refusal of the court to exclude it. There was evidence for the defendant tending to show that when Maloy drove up he addressed the defendant in opprobious language. After setting out the evidence, the bill of exceptions proceeds: "This being substantially all the evidence, the court charged the jury; and in addition to the general charge by the court, the defendant asked in writing the following charges, and to the refusal of which the defendant duly and legally excepted: (1.) 'The court charges the jury, before they can convict the defendant as charged in the indictment, they must believe, after a consideration of all the testimony, that defendant had, at the time of the difficulty, the *specific* intent to murder John Maloy, and there can be no conviction if the intent was to commit some other offense.' (2.) 'The burden of the proof rests upon the State to show, beyond a reasonable doubt and to a moral certainty, that the defendant is guilty as charged, before they can convict the defendant.' (3.) 'To authorize a conviction of an assault with intent to murder, a specific felonious intent must be proven. This is an indispensable element of the offense. The doctrine of an intent implied by law different from the intent in fact can have no application to the crime punished by section 3751 of the Code. If there was not the intent to murder the person assaulted, although there may have been a general felonious intent, a conviction of the defendant of the aggravated offense would be improper in this case.' (4.) 'The defendant is not on trial for having a bad character, and the jury is not to take into consideration the good or bad character of the defendant; and if there is any variation between the allegation in the indictment and the proof, or, in other words, if the allegations in the indictment are not supported by the proof beyond all reasonable doubt, then they must acquit the defendant.' (6.) 'If the jury find that defendant was provoked in any manner by John Maloy, by names, epithets, and low flings, flung at defendant by John Maloy at the time of the difficulty between them, and the provocation is shown to be sufficient to arouse the passion or temper of defendant, then, in this case, the jury are the judges

[Jones v. The State.]

of whether or not the provocation was sufficient to deprive the act of its felonious intent.' (7.) 'The jury may believe that the defendant has not a good character; but, before they can convict him of the offense charged in the indictment, they must be convinced beyond a reasonable doubt, and to a moral certainty, that the defendant intended to murder John Maloy as charged.'"

WM. C. DAVIS, for the appellant.—1. The court erred in allowing the State to inquire into the "general character" of the defendant, when he had not put in issue his "good character."—*Brown v. State*, 46 Ala. 175. 2. The first charge requested by the defendant should have been given.—*Simpson v. State*, 59 Ala. 1; *Cabell v. State*, 46 Ala. 195; *Meredith v. State*, 60 Ala. 441. 3. The second charge requested by the defendant should have been given.—*Wharton v. State*, 73 Ala. 366; *Walls v. State*, 90 Ala. 618. 4. The court erred in refusing the third charge asked by the defendant.—*Simpson v. State*, 59 Ala. 1. 5. The court erred in refusing to give the sixth charge requested by the defendant.—*Ross v. State*, 62 Ala. 224; *Allen v. State*, 52 Ala. 391; *Smith v. State*, 86 Ala. 28. 6. The seventh charge requested by the defendant should have been given.—*Dolan v. State*, 81 Ala. 11; *Simpson v. State*, 59 Ala. 1; *Walls v. State*, 90 Ala. 618.

W. L. MARTIN, Attorney-General, for the State, cited *Mitchell v. State*, 10 So. Rep. (Ala.) 518; *Walls v. State*, 90 Ala. 618; *Gibson v. State*, 89 Ala. 121; *Lundy v State*, 91 Ala. 100; *Allen v. State*, 52 Ala. 391; *Reese v. State*, 90 Ala. 624.

THORINGTON, J.—Appellant was indicted for an assault with intent to murder; and having testified in his own behalf, the court, against his objection, permitted the State to introduce proof of his general character in the neighborhood in which he resided, for the purpose of impeaching the credibility of his testimony. In this there was no error.—*Mitchell v. State*, 94 Ala. 68.

The witnesses to this fact, on first being interrogated in proper form, each stated that he knew defendant's general character in the neighborhood in which he resided, and that it was bad; but, on being asked by defendant's counsel what he meant by "general character," and why he said that defendant's character was bad, each replied, "because defendant is bad." The defendant then moved to exclude the testimony of each witness, because he "did not know what general character implies." The court then explained sepa-

rately and successively to the witnesses "what elements make up general character," and after such explanation the witnesses severally testified he knew defendant's general character, that it was bad, and he would not believe him on oath. These last statements of the witnesses (after the explanation by the court) were not objected to by the defendant. They fully cure whatever infirmity may have attached to the testimony of the witnesses as originally brought out, and show clearly that no possible injury could have resulted to the defendant by the refusal of the court to exclude their first statements from the jury.

The testimony of the witnesses Bryant and Richards for the State, as to the voluntary statement made to them by the defendant, after the difficulty between the latter and Maloy, was properly admitted. The statement is in the nature of a confession; it appears to have been voluntarily made; and was properly submitted to the jury to be considered by them in connection with all other testimony; furthermore, it tended to corroborate the testimony of Maloy, the party upon whom the assault was committed. The objection to this testimony is based on the ground that the witnesses' testimony did not show that defendant, in such statements, referred to the difficulty with Maloy on account of which he was being tried, but to a difficulty at a different place. This ground of objection is not borne out by the statement of the evidence in the bill of exceptions; on the contrary, as the testimony is set out, it is entirely clear that the difficulty referred to by defendant was that for which he is being prosecuted in this case.

Charges one and three asked by the defendant and refused by the court are erroneous when tested by the later decisions of this court.—*Walls v. State*, 90 Ala. 618.

It would not have been error if the court had given charge two, but inasmuch as the offense charged in the indictment involved three grades of assault, viz: assault with intent to murder, assault and battery, and simple assault, of either of which a conviction could have been had under the indictment, the jury, if this charge had been given, would, doubtless, have understood that the burden of proof rested upon the State to make out the highest grade of the offense, which was the only one expressly charged in the indictment. The tendency of the charge, therefore, was to mislead and confuse the jury, and there was no error in its refusal.—*Newton v. State*, 92 Ala. 33; *Lundy v. State*, 91 Ala. 100; *Hudson v. State*, 61 Ala. 339.

The charge numbered four, as a whole, is involved, con-

[Jones v. The State ]

fused and misleading, and that part of it which instructs the jury that they can not take into consideration the defendant's good or bad character, is clearly erroneous. Evidence as to the defendant's character was properly admitted before the jury, and it was their duty to consider it in weighing the defendant's testimony, which it was designed to impeach. The effect of the charge, had it been given, would have been to withdraw from the jury the consideration of such evidence for any purpose. The charge, was, therefore, properly refused.—*Ramsey v. State*, 91 Ala. 29.

Charge numbered six in effect instructs the jury, that if the defendant was provoked *in any manner* by Maloy at the time of the difficulty, and by such provocation the former's passion or temper was aroused, that the jury might look to that fact as being sufficient "to deprive the act of its felonious intent." In *Allen v. State*, 52 Ala. 391, it is said : "Passion may mitigate an unlawful homicide, where it is sudden and upon adequate provocation. It would, also, deprive an assault of felonious character under like circumstances. Mere passion, however, not suddenly aroused by a sudden affray, in which the accused was not the aggressor, can not mitigate a homicide, or deprive an assault with a deadly weapon of its felonious character." The charge asked ignores the inquiry as to the adequacy of the provocation, and also whether or not the defendant was, himself, the aggressor. What would be adequate provocation to deprive an assault with intent to murder if its felonious character is settled, by analogy, in the decisions of this court based on indictments for murder. In such cases it has been held that heat of passion, *per se*, never reduces murder to manslaughter, and that mere words, however opprobrious, will not have that effect; that the provocation must at least amount to personal violence, or be accompanied by acts evincing an intention to resort to immediate force, and the fatal blow must be the unpremeditated result of the passion thus aroused.—*Ex parte Sloane*, 95 Ala. 22; *Reese v. State*, 90 Ala. 624.

Charge numbered 7 is obviously incorrect as a proposition of law and is also misleading. It withdraws from the jury all consideration of defendant's guilt except the highest grade of offense charged in the indictment. Although the defendant might have been convicted under this indictment of an assault with intent to murder, or of assault and battery or of si ;·ple assault, the charge, had it been given, would have compelled an acquittal of all, if the evidence failed to satisfy the jury of defendant's guilt of the highest

[Leonard v. The State ]

grade of the offense charged in the indictment.    The charge
was, therefore, properly refused.—*Lundy v. State*, 91 Ala.
100; *Gibson v. State*, 89 Ala. 121.

The bill of exceptions shows that the exception of de-
fendant was general to the action of the court in refusing to
give all the charges requested by him, and not separate and
several to the refusal of the court to give each charge.

That some of the charges are erroneous is palpable; this
being the case the exception will avail nothing as to any,
although some may be free from error.—*Rice v. Schloss &
Kahn*, 90 Ala. 416; *Holland v. Barnes*, 53 Ala. 83.

No other exceptions being reserved, it results that the
judgment and sentence of the Circuit Court must be
affirmed.